IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VISKASE COMPANIES, INC.,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**WORLD PAC INTERNATIONAL AG and WORLD** )<br>**PAC INTERNATIONAL USA, and SUN** )<br>**PRODUCTS MARKETING UND MANUFACTURING** )<br>**AG,** )<br>)<br>Defendants. )<br>_____ )<br>**WORLD PAC INTERNATIONAL USA,** )<br>)<br>Defendant/Counter-Plaintiff, )<br>)<br>v. )<br>)<br>**VISKASE COMPANIES, INC.,** )<br>)<br>Plaintiff/Counter-Defendant )  | No. 09 C 5022 |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The parties in this action are competitors in the food casings industry.  Defendants hold (or held) rights to U.S. Patent No. 6,200,613 (the "'613 patent"), directed to food casings for use in the processing of sausages and other meats, poultry, cheese products, and other processed foods.  Plaintiff seeks a declaratory judgment that its products do not infringe any valid claim of the '613 patent.  Plaintiff also asserts state law claims for unfair trade practices, commercial disparagement, and unfair competition.

Before me are two motions to dismiss. In the first, defendants argue that plaintiff's state law claims are preempted by federal law. In the second, defendant Sun Products argues that it is not subject to personal jurisdiction in this forum. For the reasons that follow, I grant the first motion and deny the second.

I.

As a basic corollary to a patent's holder's right to exclude, "a patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004)(citations omitted); *see also Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37-38 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal."). Accordingly, federal patent law "preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." *Globetrotter*, 362 F.3d at 1374. The Federal Circuit, whose law governs the issue, *id.*, has thus held that to avoid preemption, "bad faith must be alleged and ultimately proven, even if bad faith

2

is not otherwise an element of the tort claim." *Id.* (quoting *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).

The test for bad faith comprises both objective and subjective components. *Dominant Semiconductors*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)(citing *Mikohn Gaming Corp v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).  To prevail with respect to the objective prong, an alleged infringer must demonstrate that the patentee's infringement allegations are so "objectively baseless" that "no reasonable litigant could reasonably expect success on the merits."  524 F.3d at 1260 (quoting *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007).

The complaint in this case alleges that defendants sent letters, first to plaintiff, then to two of defendants' customers (one of which was also plaintiff's customer at some point, and the other of which plaintiff expected to become so), informing them that plaintiff's products "fall within the scope of one or more claims" of the '613 patent.  The customer letters, which the complaint characterizes as "a campaign of false allegations of infringement," are the basis for plaintiff's state law business tort claims.

Undoubtedly mindful of its pleading requirements and ultimate burden of proof, plaintiff recites in the complaint that defendants sent the letters, "purposefully and in bad faith," in an effort to

harm plaintiff's business by "creating the false perception in the marketplace" that plaintiff's products infringed the asserted patent.  The complaint as a whole, however, does not support these conclusory allegations, which are insufficient to raise plaintiff's right to relief under this standard "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff makes much of two factual allegations: first, that defendants did not state, in the letters to customers, that plaintiff denied infringement; and second, that defendants had acknowledged, in a letter to plaintiff's counsel sent three years before it sent the customer letters, that at least one aspect of the accused product was "unknown."  From these facts, plaintiff concludes that defendants "recklessly asserted infringement" without a good faith basis or reasonable investigation.

Plaintiff cites no authority for the argument that a patentee demonstrates bad faith by asserting its patent rights to a customer without specifying that an alleged infringer has denied infringement.  If indeed it is common for patentees to present an alleged infringer's denial of infringement along with the patentee's own position in communications to third parties, or if patentees have some good faith obligation to do so, plaintiff has not made any allegations to this effect.[1]  Standing alone, the fact

---

[1] Of course, such communications may also serve to put the recipients of the letter on notice that they could themselves be liable for infringement.  In this light, the letters may be viewed

4

that defendants were silent as to plaintiff's denial of infringement in their letters to customers does not give rise to a plausible inference of bad faith.

Nor am I persuaded by plaintiff's argument that defendants demonstrated bad faith by sending letters advising customers of plaintiff's potential infringement while acknowledging that a particular aspect of plaintiff's product was "unknown." Absolute proof of infringement is not required before a patentee asserts its rights. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (patentee may lawfully assert its patent rights, even though it may "misconceive what those rights are."). To the extent a patentee is expected to make reasonable efforts at investigation and analysis before alleging infringement, the complaint itself suggests that defendants did so. For example, the complaint states that on several occasions, defendants sought access to the accused products (presumably to ascertain whether they indeed infringe the '613 patent), but that plaintiff refused to provide samples. The complaint further references defendants' analysis of one of the accused products that was undertaken in 2009, after defendants obtained samples from a third party, and before they sent out the customer letters, as well as a claim chart defendants provided to substantiate their assertion of

---

as advocacy pieces, and it would be odd to suppose that a patentee
would address the alleged infringer's denial of infringement.

infringement.   Far from raising an inference of bad faith, the complaint's description of defendants' investigation and analysis is consistent with the types of efforts a patentee should undertake prior to initiating a good faith enforcement action.

For the foregoing reasons, I find that plaintiff's state law claims are preempted by federal law and grant defendants' motion to dismiss them.

II.

Turning to Sun Products' jurisdictional challenge, I must again apply the law of the Federal Circuit to determine the scope of my authority.  *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009).  Although the complaint does not cite to any particular source of law in its allegations of personal jurisdiction, the parties appear to agree that Fed. R. Civ. P. 4(k)(2) governs the issue.  In cases arising under federal law (as this one does), in which the defendant is not subject to personal jurisdiction in any state (as Sun Products asserts), Rule 4(k)(2) empowers federal courts to exercise jurisdiction to the extent consistent with federal due process.  *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). Generally speaking, constitutional due process "protects persons from being haled into a court unless they have 'minimum contacts' with the sovereign that established that court." *Id.* (citing *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102

6

(1987); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980).

Sun Products insists that its contacts with the United States are so minimal that neither general jurisdiction (which requires "continuous and systematic" contacts by the defendant, and allows me to exercise personal jurisdiction over the defendant regardless of any relationship between the contacts and the cause of action, *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008)), nor specific jurisdiction (which requires that a defendant "purposefully direct" its activities to residents of this forum, and allows me to exercise personal jurisdiction over a defendant in an action that "arises out of or relates to" those activities, *id*. at 1332) is consistent with due process.  Plaintiff disagrees, of course, arguing that specific jurisdiction is demonstrably proper, and that general jurisdiction might also be proper, but that without jurisdictional discovery, plaintiff lacks access to the information it would need to make a substantial showing that it is so.

Indeed, because the parties have not conducted discovery, plaintiff need only make a prima facie showing that Sun Products is subject to personal jurisdiction. *Autogenomics*, 566 F.3d at 1016. Accordingly, "the pleadings and affidavits are to be construed in the light most favorable" to plaintiff.  *Id*. (citing *Avocent*, 552

F. 3d at 1328 (internal citations omitted).   Nevertheless, I find
that plaintiff has not made even a prima facie showing of general
jurisdiction.   Reading the pleadings and affidavits in the light
most  favorable  to  plaintiff,  however,  I  find  that  I  may
appropriately exercise specific jurisdiction over Sun Products in
plaintiff's declaratory judgment action.[2]

The  Federal  Circuit  has  examined  the  issue  of  personal
jurisdiction  in  the  context  of  declaratory  judgment  actions  on
numerous occasions.   *See, e.g.*, *Genetic Implant Systems, Inc. v.
Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997); *Red Wing Shoe Co.
v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998);
*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201
(Fed. Cir. 2003); *Breckenridge Pharm., Inc. v. Metabolite Labs.,
Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006); *Campbell Pet Co. v.
Miale*, 542 F.3d 879 (Fed. Cir. 2008).   In several of these cases,
the court made clear that while personal jurisdiction over a non-
resident defendant cannot rest on cease-and-desist letters alone,
when  such  letters  are  accompanied  by  certain  types  of  other
activities,  jurisdiction  may  be  appropriate.   *See e.g., Genetic
Implant*, 123 F.3d at 1458 (exercising jurisdiction over patentee
that also contracted with an exclusive distributor to sell patented
products  in  the  forum);   *Breckenridge*,  444  F.3d  at  1366-67

---

[2]Of course, this is all that remains of the complaint, so I
need not address jurisdiction with respect to the other claims.

(jurisdiction over patentee that also entered into an exclusive license with an entity in the forum state); *Campbell Pet*, 542 F.3d at 885-87 (jurisdiction over patentee that also engaged in "extra-judicial patent enforcement" by "bad mouthing" alleged infringer and its products at trade show).

In *Avocent Huntsville Corp. v. Aten International* Co., 552 F.3d 1324 (Fed. Cir. 2008), the court "endeavored to reconcile [its] decisions regarding personal jurisdiction in declaratory judgment actions." *Autogenomics*, 566 F.3d at 1019.  The *Avocent* court explained that a particular analytical framework applies in this type of case:

> In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit. See 35 U.S.C. § 271(a).  Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. *See Red Wing Shoe*, 148 F.3d at 1360.  In such litigation, the claim both "arises out of" and "relates to" the defendant's alleged manufacturing, using, or selling of the claimed invention.  But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the "wrongful restraint [by the patentee] on the free exploitation of non-infringing goods ... [such as] the threat of an infringement suit." *Id.* Thus, the nature of the claim in a declaratory judgment action is "to clear the air of infringement charges." *Id.* Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the

> defendant patentee in enforcing the patent or patents in
> suit. The relevant inquiry for specific personal
> jurisdiction purposes then becomes to what extent has the
> defendant patentee "purposefully directed [such
> enforcement activities] at residents of the forum," and
> the extent to which the declaratory judgment claim
> "arises out of or relates to those activities."
> *Breckenridge*, 444 F.3d at 1363.

*Id.* at 1332-33 (modifications in original). In *Autogenomics*, the

court distilled its *Avocent* holding into the principle that "only

enforcement or defense efforts related to the patent rather than

the patentee's own commercialization efforts are to be considered

for establishing specific personal jurisdiction in a declaratory

judgment action against the patentee." *Autogenomics*, 566 F.3d at

1020.

Plaintiff identifies four types of activities by Sun Products

that it claims fall into this "enforcement or defense" category: 1)

Sun Products' application for a U.S. Patent; 2) Sun Products' entry

into an exclusive license agreement with World Pac to sell patented

products in the United States; 3) Sun Products' attendance at a

trade show in Chicago and subsequent correspondence with Viskase;

and 4) Sun Products' "extra-judicial enforcement campaign" of

sending letters to customers.

As to the first, Sun Products argues that applying for a

United States patent is insufficient to justify jurisdiction over

plaintiff's *state law claims* (which are no longer at issue) but is

silent as to whether the fact of obtaining a U.S. patent enters

into the "minimum contacts" calculus with respect to the

declaratory judgment claim.  On this question, another court in this district has held, "[b]y obtaining a patent here, [patentee] has unquestionably made a meaningful contact with this nation and has purposefully availed itself of a significant benefit of United States law." *SRAM Corp. v. Sunrace Roots Enterprise Co., Ltd.*, 390 F.Supp.2d 781, 787 (N.D. Ill., 2005) (Pallmeyer, J.).

As to the second and third activities, Sun Products disputes the factual basis for plaintiff's argument, insisting that Sun Products has no license agreement at all with World Pac, and that it was World Pac, not Sun Products, whose employees attended the trade show in Chicago.  Sun Products further explains that World Pac USA did not need a license from Sun Products to distribute patented products, since "World Pac AG owns Sun Products, and consequently owns the '613 patent."  Finally, Sun Products argues that the customer letters are no more than the type of cease-and-desist letters held to be insufficient in *Red Wing Shoe* and its progeny, and that in any event, it was World Pac AG, not Sun Products, that sent the letters "to protect the rights of its subsidiary."

At the outset, I agree with Sun Products that the record does not reasonably support the inference that World Pac USA had a formal exclusive license agreement to practice the invention of the '613 patent.  This does not resolve the issue, however.  The Federal Circuit has explained that:

where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement. In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, *such as granting both parties the right to litigate infringement cases* or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

*Avocent*, 552 F.3d at 1334 (emphasis added). The crux of the issue, it appears, and the reason courts must examine exclusive license agreements closely in evaluating their jurisdictional authority over foreign patentees, is to determine whether the relationship between the patentee and the licensee is such that the patentee maintains the right (or the obligation) to pursue enforcement activities in the forum.

As far as the record in this case reveals, Sun Products was the assignee of the '613 patent and retained all rights and title to the patent until it reassigned the patent to World Pac AG in September of 2009. Sun Products acknowledges as much when it argues that World Pac AG wrote letters to its customers "to protect the rights of its subsidiary [i.e., Sun Products]." Until September 30, 2009, Sun Products presumably maintained the right to enforce its patent in the United States. That World Pac AG took on this burden on Sun Products' behalf vis-a-vis plaintiff, or that the benefits of enforcing the patent ultimately flowed to World Pac AG as Sun Products' corporate parent, do not detract from Sun Products' status, until September 30, 2009, as the formal holder of

12

all rights and interest in the patent, nor diminish Sun Products'
own right to assert the patent against any other potential
infringer in this forum.

Moreover, to the extent World Pac USA took on enforcement of
the patent in Sun Pac's stead, it is reasonable to conclude that it
did so as Sun Products' agent.  In *In re Phenylpropanolamine (PPA)
Products Liability Litigation v. Glaxosmithkline*, 344 F.Supp. 2d
686, 691 (W.D. Wash. 2003), the court explained that despite the
general rule that the jurisdictional contacts of a wholly-owned
subsidiary are not imputed to the parent, a domestic subsidiary
functions as its foreign parent's agent when it "performs services
that are 'sufficiently important to the foreign corporation that if
it did not have a representative to perform them, the corporation's
own officials would undertake to perform substantially similar
services.'" (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th
Cir. 2001)).  Although the record before me is insufficient to
ascertain the value of the '613 patent to Sun Products,[3] it is
reasonable to infer that the patent is an important enough asset
that if World Pac USA had not undertaken enforcement of the patent,

---

[3]World Pac USA's general manager stated in an affidavit that
sales of products that practice the invention of the '613 patent
account for 75% to 95% of that entity's United States sales on a
monthly basis.  Sun Products claims to have received no revenues
from the distribution of these products in the United States, but
in any event, the 2005 cease and desist letter, signed by counsel
for Sun Products, made clear that plaintiff's potential
infringement was "of great concern to *our client*."

Sun Products would have done so on its own behalf.   Accordingly,
the facts here are more similar to *In re Phenylpropanolamine* than
to *Red Wing Shoe*, in which the court observed that "doing business
with a company that does business" in the forum is an insufficient
basis for personal jurisdiction.   148 F.3d at 1361.   Sun Products
did not merely "do business" with World Pac USA.   World Pac USA
effectively stood in for Sun Products in enforcing Sun Products'
patent rights in this forum.[4]

Because I conclude that Sun Products' enforcement activities
meet the "minimum contacts" test, personal jurisdiction is
appropriate unless Sun Products can establish other considerations
that would render jurisdiction unreasonable or unfair.   *Avocent*,
552 F.3d at 1332.   The factors to consider are those set forth in

---

[4]Even Sun Products' cited authority supports the exercise of
personal jurisdiction on this rationale.   Sun Products points to
*Erie Foods Int'l v. Apollo Group & Apollo USA, Inc.*, No. 04 C 6610,
2006 U.S. Dist LEXIS 21515 at *6 (N.D. Ill. 2006) (Coar, J.) For
the general rule that a corporate subsidiary's contacts are not
attributable to the parent for jurisdictional purposes.   That case
also discusses, however, the exception that applies where corporate
formalities are not respected between the entities.   The *Erie Foods*
court ultimately declined to pierce the corporate veil, finding
that the evidence did not support that result under the applicable
state law.   The factual record in this case is insufficiently
developed at this point to analyze the veil piercing issue fully;
but I note that Sun Products' position--that World Pac AG or World
Pac USA unilaterally undertook nearly all  enforcement of the '613
patent, and received all of the income on sales of patented
products, all without any formal license agreement with Sun
Products and while Sun Products was the formal patent holder until
September 2009, after the initiation of this lawsuit--certainly
suggests an absence of respect for corporate formalities among the
three entities.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985), and the burden of proof lies squarely with Sun Products. *Avocent*, 552 F.3d at 1332. Sun Products focuses its argument on plaintiff's purported failure to make a prima facie case, however, and does not address the Burger King factors. Accordingly, it has not carried its burden.

For the foregoing reasons, Sun Products' motion to dismiss for lack of personal jurisdiction is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:  May 10, 2010

15