IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VISKASE COMPANIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| WORLD PAC INTERNATIONAL AG, | ) | |
| WORLD PAC INTERNATIONAL USA, and | ) | |
| SUN PRODUCTS MARKETING UND | ) | Civil Action No. 09-CV-05022 |
| MANUFACTURING AG, | ) | |
| | ) | |
| Defendants. | ) | JUDGE ELAINE BUCKLO |
| ———————————————— | ) | |
| | ) | |
| WORLD PAC INTERNATIONAL USA, | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VISKASE COMPANIES, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |
| ———————————————— | ) | |

**VISKASE COMPANIES, INC.'S SUBSTITUTE OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION**

HIGHLY CONFIDENTIAL

## TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT .................................................................1

II.     LEGAL PRINCIPLES ..................................................................................4

III.    FACTUAL BACKGROUND............................................................................5
        A.    The '613 Patent.......................................................................5
        B.    Asserted Claims ......................................................................8
        C.    The Accused Products .............................................................9
        D.    World Pac's Four Year Delay In Pursuing This Action .........................10

IV.     WORLD PAC IS NOT LIKELY TO SUCCEED ON THE MERITS .......................12
        A.    The Viscoat Products Do Not Infringe Any Asserted Claim ................12
              1.   The Viscoat Products Are Not "Barrier Casings" ....................12
              2.   The Viscoat Products Are Not "Impermeable" .......................13
              3.   The Viscoat Products Do Not Have The Required "Absorbent
                   Inner Layer".......................................................................14
              4.   The Doctrine Of Equivalents Is Inapplicable ...........................15
        B.    The Asserted Claims Are Invalid If Construed To Cover The Viscoat
              Products ..............................................................................15
              1.   The Asserted Claims Are Indefinite ....................................16
              2.   The Prior Art Anticipates The Asserted Claims.......................16
              3.   The Asserted Claims Are Obvious .......................................23
        C.    The '613 Patent Is Unenforceable Due To Inequitable Conduct..........26
              1.   World Pac's Misrepresentation Was Material ..........................26
              2.   World Pac Intended To Deceive The USPTO Examiner ............28

V.      WORLD PAC CANNOT SHOW IRREPARABLE HARM ...............................29
        A.    World Pac Unreasonably Delayed In Seeking Relief.........................29
        B.    World Pac Itself Is The Principal Cause Of Any Harm That It May Suffer .........34

VI.     NEITHER THE PUBLIC INTEREST NOR THE "BALANCE OF
        HARDSHIPS" FAVORS THE GRANT OF A PRELIMINARY
        INJUNCTION ...........................................................................................36

VII.    CONCLUSION ..........................................................................................39

i                                  HIGHLY CONFIDENTIAL

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,*
   314 F.3d 1313 (Fed. Cir. 2003) ...............................................................21

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.,*
   555 F.3d 984 (Fed. Cir. 2009) ...............................................................23

*Baskin-Robbins Inc. v. Patel,*
   264 F. Supp, 2d 607 (N.D. Ill. 2003)......................................................37

*Brasseler, U.S.A., I., L.P. v. Stryker Sales Corp.,*
   267 F.3d 1370 (Fed. Cir. 2001) ...............................................................29

*Datamize LLC v. Plumtree Software, Inc.,*
   417 F.3d 1342 (Fed. Cir. 2005) ...............................................................16

*Drexelbrook Controls, Inc. v. Magnetrol Int'l, Inc.,*
   720 F.Supp. 397 (D. Del. 1989) ...............................................................38

*Dudley v. HealthSource Chirporactic, Inc.,*
   585 F.Supp.2d 433 (W.D.N.Y. 2008)........................................................33

*eBay, Inc. v. MercExchange, L.L.C.,*
   547 U.S. 388 (2006) ...............................................................................34

*Ecolab, Inc. v. FMC Corp.,*
   569 F.3d 1335 (Fed. Cir. 2009) ...............................................................23

*Erico International Corp. v. Vutec Corp.,*
   516 F.3d 1350 (Fed. Cir. 2008) ...............................................................4

*FMC Corp. v. Control Solutions, Inc.,*
   369 F.Supp.2d 539 (E.D. Pa. 2005).........................................................33

*Freedman Seating Co. v. Am. Seating Co.,*
   420 F.3d 1350 (Fed. Cir. 2005) ...............................................................13

*Helifix, Ltd. v. Blok-Lok, Ltd.,*
   208 F.3d 1339 (Fed. Cir. 2000) ...............................................................4

*Henkel Corp v. Coral, Inc.,*
   754 F.Supp. 1280 (N.D. Ill. 1990)......................................................33, 38

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,*
   49 F.3d 1551 (Fed. Cir. 1995) ...............................................................30

HIGHLY CONFIDENTIAL

*Hoffman-La Roche Inc. v. Invamed Inc.,*
   213 F.3d 1359 (Fed. Cir. 2000) ...................................................................33

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.,*
   906 F.2d 679 (Fed. Cir. 1990) ...........................................................4, 37, 38

*In re Baxter Travenol Labs.,*
   952 F.2d 388 (Fed. Cir. 1991) ...................................................................16

*Innogenetics, N.V. v. Abbot Labs,*
   512 F.3d 1363 (Fed. Cir. 2008) ...................................................................26

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,*
   863 F.2d 867 (Fed. Cir. 1988) ...................................................................28

*KSR Int'l Co. v. Teleflex Inc.,*
   550 U.S. 398 (2007) ...........................................................................23, 26

*Lear v. Adkins,*
   395 U.S. 653 (1969) ...................................................................................38

*Monsanto Co. v. Bayer Bioscience N.V.,*
   514 F.3d 1229 (Fed. Cir. 2008) ...................................................................29

*Motionless Keyboard Co. v. Microsoft Corp.,*
   486 F.3d 1376 (Fed. Cir. 2007) ...................................................................15

*Muniauction, Inc. v. Thomson Corp.,*
   532 F.3d 1318 (Fed. Cir. 2008) ...................................................................23

*New England Braiding Co., Inc. v. A.W. Chesterton Co.,*
   970 F.2d 878 (Fed. Cir. 1992) .....................................................................4

*Nutrition 21 v. United States,*
   930 F.2d 867 (Fed. Cir. 1991) ...........................................................4, 29, 37

*PC Connector Solutions LLC v. SmartDisk Corp.,*
   406 F.3d 1359 (Fed. Cir. 2005) ...................................................................15

*Perricone v. Medicis Pharm. Corp.,*
   432 F.3d 1368 (Fed. Cir. 2005) ...................................................................16

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,*
   491 F.3d 1342 (Fed. Cir. 2007) ...................................................................13

*Praxair, Inc. v. ATMI, Inc.,*
   543 F.3d 1306 (Fed. Cir. 2008) ...........................................................26, 28

HIGHLY CONFIDENTIAL

*Ritchie v. Vast Resources Inc.*,
    563 F.3d 1334 (Fed. Cir. 2009) ........................................................................23, 24

*Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*,
    859 F.2d 878 (Fed. Cir. 1988) ...............................................................................13

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008) .............................................................................29

*Sundance, Inc. v. DeMonte Fabricating, Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2009) .............................................................................23

*T.J. Smith and Nephew Ltd. v. Consolidated Medical Equipment, Inc.*,
    821 F.2d 646 (Fed. Cir. 1987) ...............................................................................30

*Telemac Cellular Corp. v. Topp Telecom Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001) .............................................................................20

*Tenneco Automotive Operating Co. Inc. v. Hyrad Corp.*,
    No. 02 C 0728, 2002 WL 1632499 (N.D. Ill. July 23, 2002).................................33

*Titan Tire Corp. v. Case New Holland, Inc.*,
    566 F.3d 1372 (Fed. Cir. 2009) ...............................................................................4

*University of Texas v. Camenisch*,
    451 U.S. 390 (1981) ..............................................................................................29

*Whistler Corp. v. Dynascan Corp.*,
    1989 WL 13299 (N.D. Ill. 1989).............................................................................33

*Whistler Corp. v. Dynascan Corp.*,
    9 U.S.P.Q.2d 2087 (N.D. Ill. 1988) ........................................................................33

**Regulations**

37 C.F.R. § 1.555..........................................................................................................26

**Rules**

Fed. R. Civ. P. 65..........................................................................................................3

HIGHLY CONFIDENTIAL

## TABLE OF EXHIBITS

| Tab | Description |
|-----|-------------|
| 1 | U.S. Patent 6,200,613 |
| 2 | Expert Report of Maureen Reitman, Sc.D. Concerning Noninfringement and Invalidity of U.S. Patent No. 6,200,613 |
| | **REDACTED** |
| 12 | USPTO Notice of Recordation of Assignment Document dated Oct. 23, 2009 |
| | **REDACTED** |
| 14 | Defendants World Pac International AG and World Pac International USA's Second Response to Plaintiff Viskase Companies, Inc.'s Second Set of Interrogatories |
| 15 | Defendants World Pac International AG and World Pac International USA's Response to Plaintiff Viskase Companies, Inc.'s Third Set of Interrogatories |
| 16 | U.S. Patent 4,446,167 |
| | **REDACTED** |
| 18 | Prosecution History of Application No. 09/244,184 |
| 19 | Abandonment of the Japanese Patent Application |
| | **REDACTED** |
| 21 | Prosecution History of Application No. 09/415,285 |
| 22 | Expert Report of Todd J. Menna, Ph.D., in Support of Motion for Preliminary Injunction |
| 23 | Chart of Parties' Claim Construction Proposals |
| 24 | Viscoat Technical and Permeability Data |
| 25 | Expert Report in Support of Preliminary Injunction by Seymour G. Gilbert, Ph.D. |
| 26 | Supplement to Expert Report in Support of Preliminary Injunction by Seymour G. Gilbert, Ph.D. |
| 27 | MP Fibrous Casing Technical Data |
| | **REDACTED** |
| 29 | Defendants World Pac International AG and World Pac International USA Inc.'s Initial Response to Invalidity Contentions |
| 30 | Collection of Correspondence (Oct. 27, 2005 – Feb. 10, 2006) |
| | **REDACTED** |

HIGHLY CONFIDENTIAL

| | REDACTED |
|---|---|
| 40 | Japanese Application Prosecution History |
| 41 | Viscoat Casing Composition Certification |
| 42 | Ryan Email dated Sept. 20, 2007 |
| 43 | Declaration of Myron Nicholson, April 30, 2010 |
| 44 | Hearing Transcript dated December 8, 2009 |
| 45 | Defendant World Pac International AG and World Pac International USA's Initial Response to Plaintiff Viskase Companies, Inc.'s First Set of Requests for Admission |
| 46 | Defendants' proposed claim constructions, served March 19, 2010 |
| 47 | Excerpts of Deposition Transcript for Jeff Sherry, March 11, 2010 |
| 48 | Excerpts of Deposition Transcript for Fred Merritt, March 4, 2010 |
| | REDACTED |
| 50 | Viskase Sales Summary |
| | REDACTED |
| 52 | Defendants World Pac International AG and World Pac International USA's Initial Response to Plaintiff Viskase Companies, Inc.'s First Set of Interrogatories (pp. 16-17) |
| | REDACTED |
| 54 | Excerpts of Deposition Transcript for Myron Nicholson, March 12, 2010 |
| | REDACTED |

HIGHLY CONFIDENTIAL

I.   **SUMMARY OF THE ARGUMENT**

World Pac's motion for preliminary relief should be denied for any one of the following reasons: it delayed four years to seek relief, money damages are adequate, and the asserted claims are not infringed, are invalid and are unenforceable.   Indeed, World Pac obtained the asserted patent, U.S. Patent 6,200,613 ("the '613 patent"), only through deception.

World Pac has particularly failed to demonstrate infringement.   The Court has not yet construed the asserted claims, but the accused Viscoat products do not meet the "impermeable plastic foil" limitation under either party's construction.   Viskase's products are permeable and therefore do not infringe under Viskase's proposed construction.   Tab 2 at § IX. B; Tab 22 at App. D, pp. 1-2; Tab 24.

**REDACTED**

Tab 2 at § VIII.   Other elements are also not met depending on the Court's claim construction.

World Pac further failed to address several crucial aspects relating to the invalidity of the asserted claims.   Among other things, it completely ignored what happened to its patent application in the Japanese Patent Office ("JPO").   In 2008, years after the U.S. Patent Office ("USPTO") issued the '613 patent, the JPO rejected World Pac's patent claims based on several prior art references that the USPTO did not consider.   Tab 19 at 2; Tab 35 at 320:15-321:15; Tab 40 at WP 6236-39.   World Pac was well aware of these references but simply ignored them in its briefing.   One of the Japanese references anticipates every asserted claim.   Tab 2 at § X. C. 1.

Other references also anticipate and/or render obvious the asserted claims. Viskase has been selling casings with an inner absorbent layer impregnated with flavor or color since at least the mid-1980s under the trade name E-Z Smoke® MP® fibrous casings.   Tab 43 at ¶ 3.   These products were called "MP" to denote "moisture proof."   *Id.* at ¶ 4.   Viskase owns multiple

1

HIGHLY CONFIDENTIAL

patents directed to these products, including U.S. Patents 4,377,187 ("Chiu '187 patent") and 4,756,914 ("Jon '914 patent"), which issued in 1983 and 1988 respectively. *Id.* at 5. The MP products, as described by these patents, include a film of plastic that serves as a water vapor and oxygen barrier. *Id.* They also have a fibrous inner layer that includes a non-woven absorbent paper which is almost identical to that used in the accused products. *Id.* If the patent claims can be read to cover the accused Viscoat products, the MP products anticipate at least claims 1 and 2.

World Pac withheld this anticipatory prior art from the USPTO during prosecution of its patent. Tab 21 at WP 121-122; Tab 35 at 408:9-409:13. The '613 patent describes several types of prior casings, including pure plastic casings and ordinary fibrous casings impregnated with smoke, but fails to acknowledge that smoke-impregnated casings also included a plastic barrier. Tab 1 at 1:19-62. When confronted with a prior art reference that described a "barrier coating" on a smoke-impregnated fibrous casing, World Pac deceived the USPTO by arguing that "the nature of the 'barrier coats' of this patent is not clear." Tab 21 at WP 121-122. It then amended its claims to add "plastic" as a purported distinguishing limitation. *Id.* at WP 119-122. The USPTO did not know what World Pac knew. Claim 1 would not have issued but for World Pac's dishonest argument that the prior art barrier coats were not made of plastic. The '613 patent is unenforceable due to inequitable conduct.

World Pac ignores most of the foregoing and attempts instead to enflame the Court with arguments that Viskase "copied" World Pac's products and that Viskase's activities "threatens survival" of World Pac's business. This overheated rhetoric does not substitute for facts. The undisputed record establishes that Viskase products are constructed in a manner that World Pac *considered and rejected*. Tab 20 at WP 841; Tab 35 at 333:22-334:10. Even World Pac's expert identified numerous differences between the products. Tab 22 at App. C, pg. 2 of 10; Tab 36 at

HIGHLY CONFIDENTIAL

71:6-14, 78:4-7, 81:16-82:21, 84:6-85:16.  World Pac argues that Viskase took years to create the accused product.  D.I. 69 at 29.  This length of time exculpates Viskase from a charge of copying.

**REDACTED**

Viskase could have easily created a knock-off of World Pac's products in short order if it chose to copy instead of innovate. Tab 43 at ¶ 6.

Arguments regarding World Pac's "survival" similarly ring hollow.  Viskase launched the accused products at the AMI trade show in Chicago in November 2005.  Tab 43 at ¶ 9. World Pac demanded during that show that Viskase cease and desist its promotion of the Viscoat products.  Tab 30 at WP 17392.  Viskase responded by denying infringement.  *Id.* at WP 6453, 17338, 6448.  This is how the matter stood for more than three years.  Tab 45 at No. 18.

**REDACTED**

Viskase, not World Pac, filed the present action in August 2009 in response to World Pac's threatening letters to Viskase customers.  D.I. 1 at ¶ 17. Even then, World Pac delayed an additional three months (until November 2009) before filing its motion.  D.I. 21.  This is hardly the stuff of irreparable harm, let alone "survival."

World Pac has failed to meet its burden of showing likelihood of success on the merits, irreparable harm or the other required proof regarding the "balance of hardships" and public interest.[1]  There is nothing in the record that establishes World Pac's entitlement to the "extraordinary" relief of a preliminary injunction.  Its motion should be denied.

---

[1] Further demonstrating the weakness of its motion, World Pac did not even offer to post adequate security in the event that an injunction is granted, as required by Fed. R. Civ. P. 65(c).

HIGHLY CONFIDENTIAL

## II.   LEGAL PRINCIPLES

A preliminary injunction is a drastic and extraordinary remedy. *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990) (affirming denial of preliminary injunction); *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991). To obtain such extraordinary relief prior to trial, World Pac must establish that: (1) it is likely to succeed on the merits at trial; (2) it will suffer irreparable harm if preliminary relief is not granted; (3) the balance of hardships tips in its favor; and (4) a preliminary injunction is in the public interest. *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992). World Pac has not met its burden as to any factor.

World Pac mischaracterizes the Federal Circuit's precedent regarding the burden of proof in a preliminary injunction motion. An alleged infringer is not required, as World Pac asserts, to come forward with "clear and convincing" evidence of invalidity. To the contrary, an alleged infringer need only "put forth a substantial question of invalidity to show that the claims at issue are *vulnerable*. Thus, a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity." *Erico International Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008) (emphasis added). World Pac then bears the burden of persuasion to show that the invalidity defense "lacks substantial merit." *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000) (distinguishing allocation of burdens in preliminary injunction context from the allocation in summary judgment proceedings); *see also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue."). Viskase has more than raised a "substantial question" as to the "vulnerability" of the claims at issue.

HIGHLY CONFIDENTIAL

Indeed, in view of the indisputable evidence submitted along with this Opposition, it is Viskase that has shown a likelihood of success on the merits, if not demonstrating as a matter of law that summary judgment ought to be granted against World Pac.

## III.   FACTUAL BACKGROUND

### A.   The '613 Patent

The "Background" section of the '613 patent describes certain casing types known in the industry at the time of the application. These include: (1) fibrous casings impregnated with smoke to impart flavor or color to encased food, *see* Tab 1 at 1:19-62, and (2) plastic casings that also were impregnated with smoke to impart flavor or color to encased food, Tab 1 at 1:19-62. According to the patent, both of these types of casings suffered from drawbacks. Ordinary fibrous casings were not "impermeable" in the same sense as plastic casings. Tab 1 at 1:27-31. Plastic casings, on the other hand, allegedly could not deliver for some applications an unknown but "sufficient amount" of smoke flavor like the fibrous casings. *Id.* at 1:49-55. The invention purports to address these problems by combining known fibrous casings with known plastic casings.

The '613 patent, however, selectively described the prior art. The "Background" section omitted any discussion of another type of known casings, namely smoke-impregnated fibrous casings that had an "impermeable" plastic barrier. *See* Tab 1.

The '613 patent identifies two individuals as inventors: Ekkehardt Schaefer and Tomoyoshi Nohmi. Tab 1 at p. 1.

**REDACTED**

5                    HIGHLY CONFIDENTIAL

REDACTED

World Pac, including through its subsidiary Sun Products, thereafter applied for its patent. It first filed a patent application in Germany on October 8, 1998 and then filed a counterpart application in the United States on February 4, 1999. Tab 18 at WP 10-17, 30-39. The USPTO assigned the first U.S. application Serial Number 09/244,184 ("the '184 application"). *Id.* at 23. World Pac subsequently filed a second U.S. application, Serial Number 09/415,285 ("the '285 application"), on October 8, 1999. *Id.* at 63.

The specification of the first-filed '184 application materially differs from that of the second-filed '285 application. *Compare* Tab 18 at WP 14-49 *with* Tab 21 at WP 92-107. The '285 application, which became the '613 patent, added Figures 1 and 2 and the comparative test data that ultimately appears in column 4 of the patent. Tab 21 at WP 65-75. The USPTO

6                                              HIGHLY CONFIDENTIAL

rejected both applications in the first quarter of 2000. Tab 18 at WP 41-49; Tab 21 at WP 92-107. The applicants subsequently abandoned the first-filed '184 application in favor of proceeding only in the second-filed '285 application. Tab 21 at WP 111.

During prosecution of the '285 application, the applicants' attorney conducted three interviews with the USPTO on October 12, October 19, and October 23, 2000. *Id.* at WP 120. As a result of these interviews, the applicants submitted a "Supplemental Amendment" on October 24, 2000, presenting a new claim 11 that incorporated original claim 1 and portions of original claim 7. *Id.* at WP 119-122. These changes to the claims were required by a newly-located prior art reference, U.S. Patent 4,446,167 to Smith et al. ("the Smith '167 patent"). *Id.* at WP 121-122.

The USPTO Examiner faxed this patent to the applicants' attorney on October 12, 2000 "raising the concern that the present claims might possibly read on the food casings of that patent." *Id.* There was good reason for the Examiner's concern. The prior art Smith '167 patent describes smoke-impregnated casings that have a "barrier coating" on the casing. Tab 16 at 6:56-7:2.

In response, World Pac's attorney argued "the nature of the 'barrier coats' of this patent is not clear." Tab 21 at WP 121-122. According to World Pac's attorney, "the Examiner suggested incorporating into claim 1 a portion of previous claims 7 or 8" to distinguish claim 1 from the Smith '167 patent. *Id.* at WP 122, 125. The applicants did just that. *Id.* at WP 119-122. They submitted a new claim 11 that included the word "plastic" that it borrowed from original claim 7. *Id.* This amendment is best understood by comparing new claim 11, which became claim 1 of the '613 patent, with then-pending application claims 1 and 7. *Compare* Tab 21 at WP 109-10 *with* WP 119.

 HIGHLY CONFIDENTIAL

The applicants added only the term "plastic" from claim 7 to the existing "impermeable foil" language of claim 1 purportedly to distinguish new claim 11. They then argued that "these new claims with their plastic foils clearly distinguish over the barrier coats of the above patent." *Id.* at 122. The USPTO accepted the applicants' arguments and claim amendments, *see* Tab 21 at WP 127, and ultimately issued the '613 patent, *see* Tab 1 at p. 1.

**REDACTED**

They never disclosed this fact to the USPTO. Tab 21 at WP 121-122.

**B.     Asserted Claims**

World Pac asserts against Viskase claim 1, which is independent, and claims 2 and 8, which are dependent on claim 1. Independent claim 1 is reproduced below with the parsing adopted by World Pac's expert, Dr. Seymour Gilbert, for purposes of the invalidity analysis. The disputed claim terms are highlighted.

| Element | Claim 1 |
|---|---|
| 1 | A food ***barrier casing*** for enclosing a foodstuff to be boiled cooked or otherwise heated in the casing and for imparting a color and/or flavor to the foodstuff, wherein the casing comprises |
| 2 | at least one ***steam and/or gas impermeable plastic foil*** (1), and |
| 3 | an absorbent inner layer (2) joined to an inner side of the impermeable plastic foil (1), |
| 4 | the inner layer (2) comprising fibers selected from ***the group consisting of woven fibers, fabric, knits, and fleece,*** |
| 5 | and wherein the inner layer (2) is impregnated with coloring and/or flavoring agents ***in an amount sufficient to impart color and/or flavor to the foodstuff*** when the food barrier casing encloses the foodstuff. |

Tab 1 at 4:45-56; Tab 25 at pp. 14-15; Tab 23. Claim 2 includes all of the elements of claim 1 and further requires that the inner layer be comprised of "fibers selected from the group consisting of cotton fibers, cellulose fibers, regenerated cellulose fibers, viscose fibers, and mixtures thereof." Tab 1 at 4:57-60, 5:12-15. Claim 8 similarly includes the limitations of claim 1, but requires that the impermeable plastic foil be comprised of "at least two foils laminated

8

HIGHLY CONFIDENTIAL

together and selected from the group consisting of polyethylene foil and polyamide foil." *Id.* at 5:12-15.

### C. The Accused Products

World Pac accuses the Viscoat products of infringing the asserted claims. D.I. 22. Viskase offers these products under two brand names: SMOKE MASTER and COLOR MASTER. *Id.* at p. 2.

**REDACTED**

*Id.* The accused products are permeable. Tab 24; Tab 22 at App. D, pp. 1-2; Tab 2 at § IX. B. They are thus neither airtight nor gastight. *Id.*

Viskase did not copy World Pac's products to create its own. Tab 43 at ¶ 6.

**REDACTED**

World Pac's expert, Todd Menna, further documented many differences between the products including that Viskase's inner layer has a "visually rougher texture and multiple long fibers" when compared with World Pac's "visually smoother, flatter surface texture." Tab 33 at App. C, pg. 2 of 10.

HIGHLY CONFIDENTIAL

Menna further identified a "relative fiber density" difference and specific differences in the thicknesses between the Viskase and World Pac materials. *Id.*

Viskase developed the Viscoat products in the 2004-05 time-frame, long before it became aware of the '613 patent. As part of its standard procedure, Viskase performed a competitive analysis on World Pac's casings. Tab 48 at 22:3-22. Viskase obtained samples of these products to determine their performance characteristics, but not to use the materials from which they are constructed. *Id.* at 66:5-19.

**D.    World Pac's Four Year Delay In Pursuing This Action**

Viskase launched the Viscoat products at the 2005 AMI trade show in Chicago. Tab 43 at ¶ 9. During that show, World Pac's outside counsel informed Viskase of the '613 patent. Tab 30 at WP 17392. World Pac's attorney charged that brochures describing the accused Viscoat product "appear to recite all of the elements of at least claim 1 of the '613 patent." *Id.* From October 2005 until March 2006, the parties communicated regarding the '613 patent. Tab 30; Tab 31; Tab 39 at 15:7-16:22.

The written record establishes that Viskase repeatedly denied infringing the '613 patent.


**REDACTED**


After a conversation on March 28, 2006, the parties did not communicate again until July 2009. Tab 45 at No. 18.


**REDACTED**


HIGHLY CONFIDENTIAL

**REDACTED**

The parties also attended the same trade shows.  Tab 43 ¶¶ 8-12; Tab 35 at 339:10-11, 343:16-344:2, 347:20-348:9; Tab 32 at 61:22-62:19.  Both World Pac and Viskase attended the May 2007 IFFA Show in Frankfurt, Germany, the October 2007 AMI Show in Chicago, and the February 2009 Carnes Expo Show in Monterrey, Mexico.  *Id.*  At each of these shows, Viskase promoted the accused products.  Tab 43 at ¶¶ 8-12.

These trade shows are major undertakings.

**REDACTED**

Viskase, not World Pac, eventually filed this lawsuit in August 2009.  D.I.  1.  Viskase sought a declaratory judgment because World Pac alleged in writing in August 2009 to several of its customers, including Smithfield and West Liberty, that Viskase infringed the '613 patent.  *Id.* at ¶ 17.  World Pac thereafter delayed an additional three months to even answer Viskase's complaint.  D.I. 21.  It filed the present motion for preliminary injunction on November 16, 2009, more than four years after its attorney first demanded that Viskase "immediately" stop promoting the accused products.  D.I. 21; Tab 30 at WP 17392.

HIGHLY CONFIDENTIAL

## IV.   WORLD PAC IS NOT LIKELY TO SUCCEED ON THE MERITS

Viskase disputes that the '613 patent is infringed, valid or enforceable. The Court has not yet construed the disputed claim terms, which will affect the analysis, but World Pac has failed to show infringement under any construction. If construed broadly, moreover, the claims are invalid in view of several prior art references. World Pac has failed to carry its burden of showing a likelihood of success on the merits.

### A.   The Viscoat Products Do Not Infringe Any Asserted Claim

World Pac's supplemental brief in support of its motion substitutes a charge of "copying" for proof of infringement. D.I. 69 at 16-18. Rather than addressing whether the accused product satisfies all elements, World Pac refers the Court to its "initial memorandum" and to its two expert reports for details on its charge. *Id.* at 16. These sources do not deliver what is promised. World Pac's initial memorandum (D.I. 22 at 6) simply refers to World Pac's unsubstantiated "initial infringement contentions," which is hardly proof of infringement. Moreover, neither of World Pac's two experts provide direct proof of infringement for several claim elements. In at least two instances, World Pac's experts confirm non-infringement. Viskase's expert, Dr. Maureen Reitman, analyzed the accused Viscoat Products and has concluded that they do not infringe any of claims 1, 2 or 8 of the '613 patent. Tab 2.

### 1.   The Viscoat Products Are Not "Barrier Casings"

Claim 1 requires a "barrier casing." Viskase has proposed that this term be construed to mean an "airtight and gastight" casing, which is what the specification requires. Tab 23. If the Court adopts this construction, the Viscoat products do not infringe. World Pac's own expert, Dr. Menna, conducted permeability testing which establishes a water vapor transmission rate for the accused products of at least 2.82 $g/m^2 \cdot 24$ hours and an oxygen transmission rate for the accused products of at least 28.4 $cm^3/(m^2 \cdot 24 hours)$. Tab 22 at App. D, pp 1-2; Tab 24 at VCI

HIGHLY CONFIDENTIAL

1269; Tab 2 at § IX. These tests demonstrate that the accused products are neither airtight nor gastight. The accused products do not include a "barrier casing," as that term is properly construed, and thus do not infringe any claim of the '613 patent. *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) ("an accused product or process is not infringing unless it contains each limitation of the claim.")

       **2.**    **The Viscoat Products Are Not "Impermeable"**

Claim 1 also requires an "impermeable" plastic foil. For similar reasons as those stated for "barrier casing," the accused Viscoat products do not infringe if "impermeable" is given its ordinary meaning of "not permeable." Dr. Menna's test data shows that the products are, in fact, permeable to both water vapor and oxygen. Tab 22 at App. D, pp 1-2; Tab 24 at VCI 1269; Tab 2 at § IX.

The accused products also do not infringe under World Pac's proposed construction of the term "impermeable," which requires a casing "that prevents a measurable loss of weight, flavor, and/or taste during customary production, cooking and storage."[2]

**REDACTED**

Tab 2 at §

VIII. In contrast, World Pac's experts, Drs. Menna and Gilbert, did not conduct any weight loss testing. Tab 38 at 158:16-159:9; Tab 36 at 161:1-13. For his analysis, Dr. Menna simply referenced a Viskase web site. Tab 36 at 176:17-177:23. Relying on this advertisement is insufficient as a matter of law.[3] *See PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d

---

[2] World Pac's claim construction is indefinite as explained in Viskase's responsive claim construction brief, *see* D.I. 85 at 8, but it at least definitely requires no "measureable loss of weight."

[3] Viskase's advertisement does not claim no weight loss during "customary production, cooking and storage," and its website cannot convert a non-infringing product into one that infringes. *See Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 890-891 (Fed. Cir. 1988).

        HIGHLY CONFIDENTIAL

1342, 1351 (Fed. Cir. 2007) ("defendants' advertising and other materials did not provide a sufficient basis for a finding of infringement" where the expert failed to conduct appropriate tests.)

**REDACTED**

### 3.   The Viscoat Products Do Not Have The Required "Absorbent Inner Layer"

As discussed in Viskase's claim construction briefs (D.I. 64 and 85), the claimed "absorbent inner layer" excludes from its claim scope "individual fibers, tissue, and non-woven fabric." The accused products do not infringe under Viskase's claim construction because the Viscoat products have a non-woven material as its food contact layer. Tab 41. Under Viskase's construction, this non-woven material is not within the scope of the *Markush* group defining the "absorbent inner layer (2)" of claim 1. Tab 23.

World Pac argues under its construction that the Viscoat non-woven material is a "fabric" included in the group: "woven fibers, fabric, knits and fleece." Tab 46 at 2. "Fabric" is the only term in the group for which World Pac asserts infringement. *Id.* But, even under World Pac's construction, "fabric" does not include "individual fibers." Tab 23. Properly understood, the

---

[4] On April 12, 2010, World Pac produced some data purporting to be the results of a weight loss study. WP 18071-18074. This was five months *after* World Pac filed its preliminary injunction motion, more than a month *after* the close of discovery pertaining to its motion, and ten days *after* World Pac supplemented its motion. World Pac submitted eight declarations in support of its motion, four in the initial filing and four more in the supplemental brief, but none address this data. There is no sponsoring witness with knowledge of these tests to describe exactly what was tested or how it was tested and the provenance of the samples used in the purported tests is unknown. Neither World Pac expert cited this data in their declarations submitted on April 3, 2010. *Id.* Dr. Gilbert later supplemented his expert report to reference the data (on April 19, 2010, the day before his deposition),

**REDACTED**

HIGHLY CONFIDENTIAL

non-woven material of the accused Viscoat product is a collection of "individual fibers." Tab 2 at § IX. E.

**REDACTED**

*Id.* As such, even under World Pac's construction, the Viscoat product lacks the claim limitation.

### 4.   The Doctrine Of Equivalents Is Inapplicable

Viskase's products thus lack several aspects of claim 1 and therefore do not literally infringe. They also do not infringe under the Doctrine of Equivalents. To prevail on a charge of infringement under this theory, a patentee must present "particularized evidence and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device, or with respect to the 'function, way, result' test." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005) (*citing Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).

World Pac and its experts half-heartedly assert infringement under the doctrine in the event that one or more claim elements are missing from the accused products. They fail to explain, however, how or why the accused products are insubstantially different from the claimed products. Because it failed to provide such "particularized testimony to show infringement under the doctrine of equivalents, this court does not need determine the applicability of the limitations on the doctrine of equivalents." *Motionless Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1383 (Fed. Cir. 2007). The doctrine is inapplicable here.

### B.   The Asserted Claims Are Invalid If Construed To Cover The Viscoat Products

Viskase does not challenge the validity of the asserted claims at this stage of the proceedings to the extent that the Court adopts its construction of the claim terms. The asserted

15

HIGHLY CONFIDENTIAL

claims should be ruled invalid, however, if the Court adopts a construction that allows them to reach the accused products.

### 1.    The Asserted Claims Are Indefinite

**REDACTED**

This results in a legal limbo for the accused products because it is not possible to determine whether they infringe without knowing the subjective evaluation of end users. The Court should invalidate the claims as indefinite. *See Datamize LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1352-53 (Fed. Cir. 2005) (A claim directed to an "aesthetically pleasing" look for an electronic kiosk is subjective and therefore indefinite because infringement "cannot depend on the undefined views of unnamed persons, even if they are experts, specialists or academics.")

### 2.    The Prior Art Anticipates The Asserted Claims

A prior art reference invalidates by anticipation if it discloses, either expressly or inherently, each limitation of a patent claim. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1375 (Fed. Cir. 2005). Although every limitation must appear in a single reference, additional references may be relied upon to reveal what the single reference would mean to persons skilled in the art. *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991) (in deciding anticipation "extrinsic evidence may be considered when it is used to explain, but not expand, the meaning of a reference.") Viskase's statement of facts, which is supported by its expert, Dr. Reitman, includes claim charts establishing, chapter and verse, that several prior art references anticipate the asserted claims, which charts are incorporated herein by reference. Tab 2 at Ex. E. Two of the references merit particular attention in this brief.

HIGHLY CONFIDENTIAL

a.   **The Japanese '131 Reference Anticipates Claims 1, 2 and 8**

The JPO rejected World Pac's Japanese patent application in view of several prior art references, including Japanese Patent Application H2-69131 (the "Japanese '131 reference"). Tab 40 at WP 6236-37.  Figure 3 of the Japanese '131 reference (reproduced below with the orientation reversed for comparative purposes) is essentially identical to Figure 1 of the '613 patent.



| Japanese '131 reference – Fig. 3 | '613 Patent – Fig. 1 |
|---|---|

Tab 2 at § X. E. 8.  Both include an absorbent inner food contact layer **2** that transfers color or flavor to an enclosed foodstuff.  *Id.* at § X. C; Tab 1 at 3:1-7   The inner layer **2** in the Japanese '131 reference is attached by an "adhesive agent" **5**.  Tab 2 at § X. C; Tab 1 at 3:1-4.  Likewise, the inner layer **2** of the '613 patent casing is attached by a layer **1c** which "functions as an adhesive for the absorbent layer 2 to be subsequently applied."  Tab 2 at § X. C; Tab 1 at 3:1-4. The Japanese '131 reference further describes a nylon (polyamide) film **3** joined to a polyethylene film **4**, *see* Tab 2 at § X. C, which corresponds to the polyamide layer **1b** joined to the polyethylene layer **1a** in the '613 patent, *see* Tab 1 at 3:29-33.  After being confronted with this reference, among others, World Pac acquiesced to the JPO's rejection.  Tab 35 at 320:15-321:15.  It abandoned its Japanese application despite the fact that its products are made there. *Id.* at 319:2-8.

HIGHLY CONFIDENTIAL

**REDACTED**

This element requires that the "inner layer (2) is impregnated with coloring and/or flavoring agents." Tab 1 at 4:45-56. In this regard, Gilbert opines that the Japanese '131 reference describes a colorant that "is coated onto the inner layer" and that "a coated-on layer of colorant is different from impregnating a layer of the casing." Tab 26 at 2. This is the *only* difference that Gilbert identifies between claim 1 and the Japanese '131 reference.

This is not actually a difference, however. The Japanese '131 reference explicitly states that its casing product will "transfer the color of a color agent during boiling or steaming onto the skin side of the pressed ham to control the skin color." Tab 2 at § X. C. 1. Gilbert does not elaborate as to how or why the coloring agent, which is coated onto the absorbent inner layer, is not also impregnated thereon. *Id.*

**REDACTED**

the prior art conclusively establishes that "impregnation" of an absorbent layer occurs through a coating process. The Chiu '187 patent, described in more detail below, explains this principle:

> [T]he liquid smoke *which is coated on the casing surface,* whether externally coated or internally coated, *does not exist solely as a surface coating*. Smoke color, odor and flavor constituents which are coated on the surface penetrate the cellulosic structure of the casing as the cellulose absorbs the moisture of the smoke solution. ... *Impregnation* can occur where the casing is first contacted with the liquid smoke, or *impregnation* can occur subsequent to the initial contacting of the casing with the smoke, as for example, in the system previously described in detail and illustrated by FIG. 1.

18                                              HIGHLY CONFIDENTIAL

Tab 2 at § X. E. 5.  Coating the absorbent inner layer in the Japanese '131 reference with a coloring agent is thus the process of impregnating the absorbent inner layer.

**REDACTED**

the Japanese '131 reference anticipates claim 1.  Viskase's expert, Dr. Reitman, further confirms this analysis.  Tab 2 at § X. C. 1.

This prior art reference also anticipates claim 2, which requires an inner layer comprised of "fibers selected from the group consisting of … regenerated cellulose fibers."  Tab 1 at 4:45-56.  The Japanese '131 reference describes its inner layer as both "cellophane" and "another material having the same properties."  Tab 2 at § X. C. 1.

**REDACTED**

The Japanese '131 reference thus anticipates claim 2.

The Japanese '131 reference further describes replacing cellophane for "another material" having the same absorbing properties.  Tab 2 at § X. C. 1.  At the time of invention of the '613 patent, fibrous materials were indisputably recognized as "another material" for delivering flavor or color.  Tab 1 at 1:25-26.  The '613 patent itself acknowledges that prior art "fibrous" materials were suitable for the color-transfer function provided by cellophane in the Japanese '131 reference.  *Id.* at 1:19-39-48.

**REDACTED**

HIGHLY CONFIDENTIAL

**REDACTED**

the Japanese '131 reference inherently described fibrous inner layers when it described "cellophane" and "another material having the same properties." Tab 2 at § X. C. 1. Under these circumstances, the Japanese '131 reference's disclosure of "cellophane" and "another material" with similar properties inherently included fibrous materials. *See Telemac Cellular Corp. v. Topp Telecom Inc.*, 247 F.3d 1316, 1327-30 (Fed. Cir. 2001) (relying on the inventor's patents and "informal" invention disclosure documents to conclude that a prior art reference inherently described an allegedly missing element).

Finally, the Japanese '131 reference anticipates claim 8, which requires "at least two foils laminated together and selected from the group consisting of polyethylene foil and polyamide foil." Tab 2 at § X. C. 1. As illustrated in Figure 3 above, this reference discloses a polyamide layer 3 and a polyethylene layer 4 in the identical configuration as that described by the '613 patent. *Id.* at § X. C; Tab 1 at 3:29-33. The Japanese '131 reference therefore anticipates claims 1, 2 and 8.

b.      **The Prior Art MP Products (Chiu '187 Patent)**

Viskase's prior art MP products, including as described by the Chiu '187 patent, also anticipate claims 1 and 2. These casing products, which Viskase has sold since the mid-1980s, include a fibrous inner layer impregnated to impart smoke and flavor to the foodstuff. Tab 43 at ¶ 3. They also include a "moisture proof" coating of polyvinylidene chloride ("PVDC"), which is a type of plastic. *Id.* at ¶ 5; Tab 2 at § X. C. 3. The Chiu '187 patent, which issued in 1983, describes the MP products as commercially sold. Tab 43 at ¶ 5. Dr. Reitman, Viskase's expert, confirms that these prior art products, including as described by the Chiu '187 patent, anticipate

HIGHLY CONFIDENTIAL

claims 1 and 2.  World Pac was fully aware of this prior art but did not disclose it to the USPTO during prosecution of the '613 patent.

### REDACTED

This is the *only* difference identified between claim 1 and the prior art MP casings, including as described by the Chiu '187 patent.

Once again, however, this is not actually a difference.  Viskase's literature relating to this product, dated ten years before World Pac even applied for its patent, describes the PVDC coating as providing a "high degree of impermeability of water and oxygen."  Tab 27.   The Chiu patent describes the PVDC coating as "moisture proof."  Tab 2 at § X. E.  It further claims a "barrier coating."  *Id.*  These descriptions in the Chiu '187 patent of a "moisture proof" coating and a "barrier coating" are presumptively enabled and apply in an invalidity challenge for everything that is disclosed.  *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).

### REDACTED

HIGHLY CONFIDENTIAL

**REDACTED**

The MP products should be considered "impermeable" if that term is broadly construed.

**REDACTED**

World Pac asserts that "self-supporting" is a necessary component of the claim construction of "plastic foil." Tab 23. To the extent the Court rejects this construction, this distinction is without merit. The Chiu '187 patent explicitly describes the barrier coating as a "moisture proof film." Tab 2 at § X. E.    **REDACTED**

**REDACTED**                    The film on the MP products in any event is self-supporting, as Dr. Reitman's report makes abundantly clear. Tab 2 at § X. E. 2.



The MP products, as described by the Chiu '187 patent, thus included even the "impermeable plastic foil" limitation, *i.e.*, Element 2, to the extent that this term is construed sufficiently broadly to cover the accused Viscoat products.

**REDACTED**

the prior art MP products/Chiu '187 patent anticipates claim 1.

HIGHLY CONFIDENTIAL

Claim 2 is also anticipated by the MP Products/Chiu '187 patent because it requires only that the inner layer include "fibers selected from the group consisting of cotton fibers, cellulose fibers, regenerated cellulose fibers, viscose fibers, and mixtures thereof." Tab 2 at § X. C. 2-3. World Pac concedes that the inner layers described by Chiu '187 patent satisfy this claim element. Tab 29 at 4.

### 3.     The Asserted Claims Are Obvious

The Court should, in the alternative to the foregoing anticipation arguments, find the asserted claims to be obvious. In 2007, the Supreme Court injected a needed dose of reality into the patent law and rejected prior "rigid" requirements of the Federal Circuit in connection with an obviousness analysis. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415 (2007).

The Federal Circuit has since invalidated many issued patents as obvious, including those in which district courts upheld the validity. *See, e.g., Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1349-1350 (Fed. Cir. 2009) (addition of pressure limitation was an obvious variation to a method for spraying disinfectants onto meat products); *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 992-993 (Fed. Cir. 2009) (use of a lid as a stand in a candle holder was "predictable variation" that was "grounded in common sense"); *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 550 F.3d 1356, 1367 (Fed. Cir. 2009) (substituting single sheet tarp with segmented tarp for truck covers was "inescapably obvious"); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1325 (Fed. Cir. 2008) (substitution of electronic system with web browser system was "obvious as a matter of law"). Even Judge Posner, sitting by designation, held a patent obvious. *See Ritchie v. Vast Resources Inc.*, 563 F.3d 1334, 1337 (Fed. Cir. 2009) (substitution of borosilicate glass for ordinary glass was not a "venture into the unknown").

The record in this action reveals that the claimed "invention" is unworthy of patent protection because it embodies exactly the type of "modest, routine, everyday, incremental

HIGHLY CONFIDENTIAL

improvements of an existing product or process that confer commercial value (otherwise they

would not be undertaken) but do not involve sufficient inventiveness to merit patent protection."

*Id.*  at 1337.

**REDACTED**

In this regard, the striking comparison between Figure 3

of the Japanese '131 reference and Figure 1 of the '613 patent is worth repeating:



| Japanese '131 reference – Fig. 3 | '613 Patent – Fig. 1 |
|---|---|

Tab 2 at § X. E. 8.

**REDACTED**

As noted above, this is *not* a difference; coating results in

impregnation.  In any event, Gilbert and World Pac concede that smoke-impregnated fibrous

HIGHLY CONFIDENTIAL

layers were known by, among others, the Chiu '187 patent. Tab 1 at 1:24-25. A simple substitution of the cellophane layer 2 in the Japanese '131 reference for the known smoke-impregnated fibrous layer of the Chiu '187 patent yields not only the structure, but the exact combination of materials described in the '613 patent and particularly recited in claims 1, 2 and 8. Tab 2 at § X. E. 8.

This substitution is inherently described by the Japanese '131 reference itself, which states that "another material having the same properties" could be used in place of the cellophane. *Id.* at § X. C. 1. The "Background" of the '613 patent identifies smoke-impregnated fibrous materials as suitable for this purpose, *see* Tab 1 at 1:25-26,

**REDACTED**

It would have been a routine modification (at most) to replace cellophane with fibrous. This is not hindsight. The Japanese '131 reference told persons of skill in the art to make this substitution.

Likewise, a simple substitution of the "moisture proof film" of the Chiu '187 patent for known plastic foils/films would result in the subject matter recited in claims 1, 2 and 8. Tab 2 at

**REDACTED**

§ X. E. 8.

World Pac admit that many prior art references disclosed such films, including the Japanese '131 reference and U.S. Patent 5,698,279 ("Vicik '279 patent"). Tab 29 at 9-10. The "Background" section of the '613 patent also admits that such plastic films are known in the prior art. Tab 1 at 1:25-26. That process of laminating these plastic films to fibrous materials was also known is beyond dispute. Tab 38 at 230:16-231:12; Tab 35 at 129:14-23. Substituting the moisture proof films produced by coating

HIGHLY CONFIDENTIAL

(Chiu '187 patent) for sheet-like plastic films (e.g., admitted prior art, the Japanese '131 reference or Vicik '279 patent) is an obvious variation of the prior art MP products.

The Supreme Court in *KSR* explained "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 550 U.S. at 416. Just so in this action. While dismissed by World Pac as "cursory allegations," Viskase has demonstrated at least a "substantial question" as to the vulnerability of the asserted claims for obviousness.

### C.   The '613 Patent Is Unenforceable Due To Inequitable Conduct

"[I]nequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." *Innogenetics, N.V. v. Abbot Labs*, 512 F.3d 1363, 1378 (Fed. Cir. 2008). Inequitable conduct results in unenforceability of the patent. *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1328 (Fed. Cir. 2008). Even at this stage, the facts known to Viskase leave little room for doubt that the '613 patent is unenforceable for inequitable conduct. World Pac falsely represented the prior art to induce the USPTO Examiner to allow the '613 patent to issue, while withholding information known by Mr. Schaefer.

#### 1.   World Pac's Misrepresentation Was Material

Inventor Schaefer withheld from the USPTO the fact that Viskase and others had sold plastic barrier casings with smoke-impregnated fibrous inner layers. Tab 21 at WP 121-122. During prosecution, the USPTO Examiner brought the prior art Smith '167 patent to the attention of the applicants' attorney. Tab 21 at WP 121. This patent did not explicitly describe the materials used to form a "barrier," but the Examiner raised "concern that the present claims might possibly read on the food casings of that patent." *Id.* The casings described by Smith are identical to the "regenerated cellulose fibers" that the '613 patent describes as suitable for its

HIGHLY CONFIDENTIAL

"absorbent inner layer." Tab 16 at 6:56-7:2. And, the Smith '167 patent explicitly describes a "barrier coating" on the casing. *Id.*

Rather than addressing the Examiner's "concern" by disclosing what Schaefer knew, his attorney submitted a Supplemental Amendment which falsely represented that application claim 7, with its "plastic" foil, differed from the "barrier coats" of the Smith '167 patent:

> While the nature of the 'barrier coats' of this patent is not clear, the Examiner suggested incorporating into claim 1 a portion of previous claims 7 or 8. Accordingly, new claim 11 incorporates the plastic foil of the first portion of previous claims 7. … It is submitted that these new claims with their plastic foils clearly distinguish over the barrier coats of the above patent.

Tab 21 at WP 121-122. World Pac added only the term "plastic" from claim 7 to the existing "impermeable foil" language of claim 1. *Id.*

The USPTO accepted the arguments and claim amendments made by World Pac, *see Id.* at WP 127, and ultimately issued the '613 patent on March 13, 2001, *see* Tab 1 at p. 1. New claim 11, however, should not have issued because the addition of "plastic" to "impermeable foil" did not distinguish new claim 11 from the Smith '167 patent. The USPTO allowed this claim to issue only as a result of applicants' misrepresentation that "the nature of the 'barrier coats' is not clear" and that the "new claims with their <u>plastic</u> foils clearly distinguish over the barrier coats of the [Smith] patent." Tab 21 at WP 127.

Contrary to the statements made to induce allowance of the '613 patent,

**REDACTED**

HIGHLY CONFIDENTIAL

**REDACTED**

37 C.F.R. § 1.555(b)(2) (defining materiality as including information that "refutes, or is inconsistent with, a position the patent owner takes in: (i) Opposing an argument of unpatentability relied on by the [USPTO], or (ii) Asserting an argument of patentability").

The representations made to obtain allowance of the claims directly contradict positions now taken by World Pac in this litigation. In its Claim Construction Reply brief, World Pac argues that the nature of Smith's barrier coats is clear:

| Supplemental Amendment | World Pac Argument (D.I. 86 at 9) |
|---|---|
| While the nature of the 'barrier coats' of this patent *is not clear*, the Examiner suggested incorporating into claim 1 a portion of previous claims 7 or 8. Accordingly, new claim 11 incorporates the plastic foil of the first portion of previous claims 7. | [I]t *is clear* that the "barrier coats" of Smith are plastic (fibrous casings would not provide a barrier layer, and the casings cannot be coated with metal) |

The critical nature of World Pac's misrepresentations as to Smith's barrier coatings to the examination of the application leaves no doubt as to materiality.

### 2.   World Pac Intended To Deceive The USPTO Examiner

Despite an understanding of the nature of Smith's barrier coatings, World Pac withheld facts from the Examiner. In determining whether a failure to disclose material information was intentional, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc). Because direct evidence of deceptive intent is rarely available, such intent can

HIGHLY CONFIDENTIAL

be inferred from indirect and circumstantial evidence. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008).

The failure to initially cite plastic coated fibrous casings was compounded by false statements to overcome the Smith '167 patent. This is ample evidence of an intent to deceive. Even so, Viskase need not demonstrate actual knowledge to prevail. *Brasseler, U.S.A., I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (noting that an attorney cannot willfully – or even through gross negligence – avoid learning of information's materiality to defeat a claim of inequitable conduct). The Court cannot allow World Pac to simply "set aside" and unilaterally discount its own misleading and inconsistent statements. *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1241 (Fed. Cir. 2008) (finding intent to deceive where patent attorney made an argument for patentability he could not have made had he disclosed the withheld information). The '613 patent never should have issued.

## V.     WORLD PAC CANNOT SHOW IRREPARABLE HARM

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Here, World Pac seeks to upend rather than maintain the *status quo*.

**REDACTED**

### A.     World Pac Unreasonably Delayed In Seeking Relief

World Pac indisputably learned of Viskase's activities in 2005. Tab 30 at WP 17392. This alone should disqualify it from seeking preliminary relief more than four years later. *See, e.g., Nutrition 21*, 930 F.2d at 872 ("that Nutrition 21 delayed for a substantial period of time before seeking a preliminary injunction at least suggests that the *status quo* does not irreparably damage Nutrition 21"). Even a short-lived but unexplained delay will be a sufficient reason to

29                    HIGHLY CONFIDENTIAL

deny a motion for preliminary relief. *See T.J. Smith and Nephew Ltd. v. Consolidated Medical Equipment, Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987); *See also High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("Absent a good explanation, not offered or found here, 17 months is a substantial period of delay that militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief.")

World Pac first brought the '613 patent to Viskase's attention when its attorney issued a cease and desist letter during the 2005 AMI show in Chicago. Tab 30 at WP 17392. Viskase refused to comply with World Pac's demand because the accused products did not and do not infringe the '613 patent. Tab 43 at ¶ 9; Tab 30 at WP 6453, 17338, 6448.

REDACTED

Certainly such an action by Viskase, seemingly in accordance with World Pac's demand, certainly would have merited a confirming letter from World Pac's attorney. At minimum, a World Pac employee would have exchanged at least an *internal* email regarding such a significant

HIGHLY CONFIDENTIAL

**REDACTED**

From between March 2006 and June 2009, the parties did not communicate at all. Tab 31 at WP 18080-83; Tab 39 at 50:7-21:8; Tab 45 at No. 18; Tab 55. This does not mean that Viskase stopped promoting its products or that World Pac was unaware of Viskase's commercial activities. To the contrary, Viskase vigorously promoted its products during this time period, including at the industry-wide trade shows attended by World Pac. Tab 43 at ¶¶ 8-12.

**REDACTED**

Most prominently, Viskase promoted the Viscoat products at the October 2007 AMI trade show in Chicago, which activities are documented in photographic evidence. Tab 43 at ¶¶ 8-12, Ex. B.

**REDACTED**

---

[5]          **REDACTED**                       For several months in late 2005 and early 2006, the parties communicated extensively regarding World Pac's accusations of infringement. Tab 30; Tab 31; Tab 39 at 15:7-16:22. Viskase repeatedly denied infringing the '613 patent and nowhere indicated that it removed a sample or would stop promoting its product. Tab 30 at WP 6453, 17338, 6448.

**REDACTED**

31                         HIGHLY CONFIDENTIAL

**REDACTED**

This is verifiably false.

Viskase produced to World Pac without restriction photographs of its 2007 booth. Tab 43, Ex.

B. These photographs show "Viscoat" promoted in large banners and sample cases. *Id.*

**REDACTED**

At an early hearing on this motion, World Pac's attorney informed the Court (Magistrate

Judge Nolan) that "our salespeople police the market continually." Tab 44 at p. 6.

**REDACTED**

HIGHLY CONFIDENTIAL

REDACTED

World Pac's failure to obtain a sample has absolutely nothing to

do with Viskase;

REDACTED

In any event, obtaining a sample of the accused product was not

required despite World Pac's "Rule 11" argument to the contrary. D.I. 69 at 31. A party may

bring an infringement lawsuit to gain evidence if it could not otherwise obtain needed

information from a potential infringer. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359,

1363-65 (Fed. Cir. 2000).

Not one of World Pac's factual or legal excuses for failing to act promptly hold water. It

delayed filing suit at its own discretion and this Court should not rush to solve a "problem" of

World Pac's creation. If World Pac had brought suit in 2006, 2007 or even 2008, a trial in this

action likely would have occurred by now.

World Pac cites to several inapposite district court cases (D.I. 69 at 32-33) to justify its

admitted "several-year gap."[6] None of these cases justify World Pac's failure to act reasonably

---

[6]World Pac conveniently overlooks more applicable authority, including *Tenneco Automotive Operating Co. Inc. v. Hyrad Corp.*, No. 02 C 0728, 2002 WL 1632499, *2 (N.D. Ill. July 23, 2002) ("If Tenneco had an immediate concern for the irreparable harm it would suffer, it would not have waited a year and a half to ask for relief."). Instead, it chooses to rely on *Whistler Corp. v. Dynascan Corp.*, 9 U.S.P.Q.2d 2087 (N.D. Ill. 1988), but ignores the fact that the Court ultimately *denied* the preliminary injunction. *Whistler Corp. v. Dynascan Corp.*, 1989 WL 13299 (N.D. Ill. 1989). Cases excusing delays due to USPTO reexamination or reissue proceedings are also inapposite. *See Jacobson v. Cox Paving, Co.*, 19 U.S.P.Q.2d 1641 (D. Ariz., 1991); *see also Henkel Corp v. Coral, Inc.*, 754 F.Supp. 1280 (N.D. Ill. 1990). The remaining two cases cited by World Pac are neither binding nor relevant, *e.g.*, a copyright case decided in part based on a statutory presumption of irreparable harm (*FMC Corp. v. Control Solutions, Inc.*, 369 F.Supp.2d 539 (E.D. Pa. 2005)) and a trademark case in which preliminary relief was denied (*Dudley v. HealthSource Chiropractic, Inc.*, 585 F.Supp.2d 433 (W.D.N.Y. 2008)).

33                          HIGHLY CONFIDENTIAL

in this action. Indeed, all of the cases upon which it relies were decided prior to the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), which abrogated the presumption of irreparable harm upon a finding of patent infringement. There is simply no reason to enter a preliminary injunction on this record.

**B.    World Pac Itself Is The Principal Cause Of Any Harm That It May Suffer**

**REDACTED**

    HIGHLY CONFIDENTIAL

**REDACTED**

 HIGHLY CONFIDENTIAL

## VI.   NEITHER THE PUBLIC INTEREST NOR THE "BALANCE OF HARDSHIPS" FAVORS THE GRANT OF A PRELIMINARY INJUNCTION

**REDACTED**

In any event, World Pac will be free to compete like any other supplier even if Viskase is not enjoined.

**REDACTED**

36                              HIGHLY CONFIDENTIAL

**REDACTED**

The market includes alternatives and World Pac must prove any allegedly lost market share. The Federal Circuit has held that granting a preliminary injunction on the basis of speculative loss of market share is improper because such a rule would result in granting preliminary injunctions "in every patent case where the patentee practices the invention." *Nutrition 21*, 930 F.2d at 871.

Viskase expended significant resources in research and development of the Viscoat products without any knowledge of the '613 patent. Viskase further marketed its Viscoat products to its customers and potential customers for years **REDACTED**

Viskase's own reputation as a reliable supplier may be irrevocably harmed if it is required to remove its products from the marketplace before a trial. Tab 43 at ¶ 15. *Illinois Tool*, 906 F.2d at 683 (hardship faced by a party that must withdraw its product from the market before trial can be devastating). The Court should decline the request for such drastic relief in view of World Pac's own inaction. Had World Pac joined issue in 2005, or even 2007 when it knew that Viskase had been promoting its products to World Pac customers, this case would have already been resolved.[11] It would be fundamentally unfair to deprive Viskase of an opportunity to exonerate its products at trial after this lengthy period of time.

---

**REDACTED**

[11] World Pac claims that any harms suffered by Viskase are "self-inflicted" because Viskase refused to provide a sample of the accused products. **REDACTED**

*Henkel*, the other case

37                                    HIGHLY CONFIDENTIAL

What World Pac complains is a "hardship" is nothing more than good old-fashioned competition. Viskase has successfully developed its own Viscoat products, which it has been able to sell to certain customers. For its part, World Pac, whose different products have their own performance characteristics, has successfully made sales to its own customers. This is true even in the face of Viskase's presence in the market, *i.e.*, the status quo.

Given the weak showing of likelihood of success here, World Pac cannot meet the high requirement to show harm. Based upon the serious questions regarding the validity and enforceability of the World Pac patent, denying World Pac's motion best promotes the public interest. Specifically, the public interest in the protection of patent rights is counterbalanced by the alleged infringer's right to compete. *Illinois Tool*, 906 F.2d at 684. There is an important public interest in permitting full and free competition in the use of ideas which are, in reality, a part of the public domain, *Lear v. Adkins*, 395 U.S. 653, 670 (1969), and the public's interest in protecting patent rights only extends to valid patents. *Drexelbrook Controls, Inc. v. Magnetrol Int'l, Inc.*, 720 F.Supp. 397, 408 (D. Del. 1989). The Court should not prevent customers (including West Liberty) from selecting their supplier of choice prior to a full trial on the merits.

---

World Pac relies on, is distinguishable, as it involved a non-infringing alternative that could have been easily utilized. *Henkel Corp v. Coral, Inc.*, 754 F.Supp. at 1308.

38                                    HIGHLY CONFIDENTIAL

## VII.   CONCLUSION

For all of the foregoing reasons, and for those to be established at a hearing on this matter, World Pac's motion for a preliminary injunction should be denied.

Respectfully submitted,

Date:  May 7, 2010

LEYDIG, VOIT & MAYER, LTD.

/s/  John W. Kozak
John W. Kozak (IL #1519670)
David M. Airan (IL #6215687)
Nancy J. Gettel (IL #6282946)
Two Prudential Plaza
Suite 4900
Chicago, Illinois  60601-6780
(312) 616-5600 (tel)
(312) 616-5700 (fax)

Attorneys for Viskase Companies, Inc.

                    HIGHLY CONFIDENTIAL

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing VISKASE COMPANIES INC.'S SUBSTITUTE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION was served this 7th day of May, 2010 upon the following counsel for defendant via the CM/ECF system:

John D. Simmons, Esq.
PANITCH SCHWARZE BELISARIO & NADEL LLP
One Commerce Square
2005 Market Street, Suite 2200
Philadelphia, PA 19103-7013
(215) 965-1330 (tel)
(215) 965-1331 (fax)
jsimmons@panitchlaw.com
smurray@panitchlaw.com

Jacqueline A. Criswell, Esq.
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000 (tel)
(312) 627-1717 (fax)

By:/s/  John W. Kozak
John W. Kozak (IL #1519670)
David M. Airan (IL #6215687)
Nancy J. Gettel (IL #6282946)
LEYDIG, VOIT & MAYER LTD.
Two Prudential Plaza
Suite 4900
Chicago, Illinois  60601-6780
(312) 616-5600 (tel)
(312) 616-5700 (fax)

HIGHLY CONFIDENTIAL