**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VISKASE COMPANIES, INC.**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 9 C 5022 |
| | ) | |
| **WORLD PAC INTERNATIONAL AG and WORLD PAC INTERNATIONAL USA, and SUN PRODUCTS MARKETING UND MANUFACTURING AG**, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| **WORLD PAC INTERNATIONAL USA,** | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **VISKASE COMPANIES, INC.,** | ) | |
| | ) | |
| Plaintiff/Counter-Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

In August of 2009, plaintiff Viskase sought a declaratory judgment that it does not infringe any valid claim of U.S. Patent No. 6,200,613 (the "'613 patent"), which is owned by defendant World Pac International USA ("World Pac USA").[1]  World Pac USA then counterclaimed for patent infringement and moved for a preliminary injunction.  After

---

[1] Defendant Sun Products was the previous assignee of the patent, and both Sun Products and World Pac USA are wholly owned subsidiaries of World Pac International AG. I refer to defendants collectively as "World Pac."

oral argument buttressed by several rounds of briefing, I construed a number of contested claim terms, *Viskase v. World Pac Intern. AG*, 714 F. Supp. 2d 878 (N.D. Ill. May 18, 2010), and later determined, following a week of evidentiary hearings and further briefing, that a preliminary injunction was unwarranted. *Viskase Companies, Inc. v. World Pac Intern.*, ---F. Supp. 2d---, 2010 WL 3170757 (N.D. Ill. Aug. 9, 2010).

Now before me are numerous motions for summary judgment. Viskase moves for summary judgment of non-infringement, of invalidity (for anticipation or indefiniteness), and of no willful infringement. World Pac seeks summary judgment on its claim of infringement, as well as on Viskase's affirmative defenses of invalidity (for anticipation and for indefiniteness), of unenforceability (for inequitable conduct), of prosecution history estoppel, of acquiescence, waiver or laches, and of limitation under 35 U.S.C. § 287. For the following reasons, I grant Viskase's motion for summary judgment of invalidity on the ground that the asserted claims are anticipated by Japanese Application H2-69131 ("JP '131"), and I deny the remaining motions as moot in light of this disposition.

I.

In my previous opinions, I have summarized both the invention claimed in the '613 patent and the history and contours of the parties' dispute. I presume familiarity with those opinions but recap briefly here for convenience.

The '613 patent, entitled "Food Casing," issued on March 13, 2001. The patent is directed to a food casing whose multi-layered structure allows it effectively to impart color and/or flavor to enclosed foods, while preventing losses in weight, flavor, and taste. The '613 patent's disclosure explains that the invention is superior, on the one hand, to the fibrous casings previously known in the art, which did not prevent weight, flavor, and taste loss during processing, and which were susceptible to contaminants; and on the other, to the known plastic casings, which could not adequately store and transfer coloring or flavoring agents to enclosed foods. A preferred embodiment of the invention, which World Pac has practiced commercially in the United States since 1999, is a four-layered structure that includes, beginning with its outermost layer: a polyethylene layer; then a polyamide or nylon layer; then another polyethylene layer that has been extruded wet onto the previous two layers (allowing it to function as an adhesive for the innermost

layer); then the absorbent inner layer adjacent to the enclosed food.

World Pac's patented casings met with commercial success upon their introduction to the United States market, as they were perceived as offering valuable improvements over the previously available casings. Recognizing that World Pac had "created a nice niche" for itself in a "booming" market, Viskase began research and development toward a new line of products to compete with World Pac's patented casings. The objective of these efforts was to come up with what Viskase employees sometimes referred to as a "World Pac knock-off," a "World Pac me-too," or a "World-Pac replacement." Sometime in the mid-2000's (exactly when is disputed, but it is not material to the present motions) Viskase launched the accused Viscoat casings, which have competed successfully with World Pac's patented casings and have displaced World Pac in a portion of its "niche."

In this litigation, Viskase has asserted that the invention claimed in the '613 patent was not novel and is anticipated by numerous prior art references. In its motion for summary judgment, Viskase focuses on two of these references--JP '131, and U.S. Patent No. 5,955,126 ("Jon '126")--and contends that the evidence that each discloses every element of the asserted claims is undisputed. Because

I agree with Viskase as to the JP '131 reference, I need not analyze whether Jon '126 also anticipates the '613 patent.

II.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). While patent claims are presumed valid, this presumption can be overcome by clear and convincing evidence. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1575 (Fed. Cir. 1987).

A claim is anticipated, and therefore invalid, if "the invention was patented or described in a printed publication . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). "To anticipate, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim." *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). Anticipation is a question of fact, but it may be resolved on summary judgment if there is no genuine dispute of material fact. *Leggett & Platt, Inc. v. VUTEk, Inc.*, 537 F.3d 1349, 1352 (Fed. Cir. 2008). The dispositive issue is whether a person skilled in the art would reasonably have understood or inferred from the prior art reference that every element of the asserted claim was disclosed in that

reference. *In re Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991).

### III.

The parties agree that claim 1 of the '613 patent can be broken down into five elements as follows:

<u>Element 1</u> – A food barrier casing for enclosing a foodstuff to be boiled, cooked, or otherwise heated in the casing and for imparting a color and/or flavor to the foodstuff, wherein the casing comprises

<u>Element 2</u> – at least one steam and/or gas impermeable plastic foil

<u>Element 3</u> – and an absorbent inner layer joined to an inner side of the impermeable plastic foil

<u>Element 4</u> – the inner layer comprising fibers selected from the group consisting of woven fibers, fabric, knits and fleece

<u>Element 5</u> – and wherein the inner layer is impregnated with coloring and/or flavoring agents in an amount sufficient to impart color and/or flavor to the foodstuff when the food barrier casing encloses the foodstuff.

In its opening memorandum, Viskase methodically addresses each of the foregoing elements, identifying the evidence it claims demonstrates the absence of a genuine dispute that each is disclosed in JP '131. Rather than

6

refute Viskase's evidence in a similarly point-by-point fashion, World Pac places all--or nearly all--of its eggs in a single, unconventional basket: the argument that, in World Pac's own terms, "what's good for the goose is good for the gander." That is, World Pac insists that because Viskase has not conducted any testing to ascertain whether the casings described in JP '131 (or in any other asserted reference) satisfy the "impermeable" limitation as I have construed it, Viskase has not met even its threshold burden of identifying evidence entitling it to judgment, much less has it demonstrated the absence of a material factual dispute.

A bit of context is helpful to understanding World Pac's argument. After considering the parties' contested claim construction arguments, I ultimately agreed with World Pac that "impermeable," as used in the '613 patent, means "having a low enough permeability or transmission rate to steam and/or gas to prevent a measurable loss of weight, flavor, and taste during customary production, cooking, and storage." This construction--which I continue to believe is correct based on the intrinsic evidence--played a central role in my decision to deny World Pac's motion for a preliminary injunction. Although the evidence presented over the course of the preliminary injunction proceedings suggested several potential bases for declining to grant the requested relief,

I ultimately focused on what I considered the most straightforward: World Pac's failure to conduct any testing to establish that the accused casings prevent a measurable loss in taste and flavor, which I concluded it would have had to do to show a likelihood of success on the merits of its infringement claim, given its own, hard-won construction of "impermeable."

Here, World Pac seeks to turn that conclusion to its advantage on the issue of invalidity. While its "what's good for the goose is good for the gander" argument is not without some conceptual appeal, as there is indeed a symmetry between the anticipation and infringement analyses, *see, e.g.*, *Astrazeneca LP v. Apotex, Inc.*, ---F.3d---, 2010 WL 4286284 at *10 (Fed. Cir. 2010) (citing the "oft-repeated axiom 'that which would literally infringe if later in time anticipates if earlier.'"), it simply is not supported by the law. World Pac cites no authority that requires "testing" of the prior art to prove anticipation.[2] In fact, because the dispositive

---

[2] And, as Viskase observes, courts routinely grant summary judgment of invalidity based on anticipation without requiring such testing. *See, e.g., Marrin v. Griffin*, 599 F.3d 1290, 1295 (Fed. Cir. 2010) (finding a side-by-side comparison of the claim language and the language in the reference "sufficient" to demonstrate anticipation); *Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1382 (Fed. Cir. 2009) (affirming summary judgment based on language of reference, without regard to whether disclosed method described in

8

question is what a person of skill in the art at the relevant time would have understood the reference to disclose, *In re Baxter*, 952 F.2d at 390, an anticipating reference need only "describe" the claimed invention, and need not be reduced to practice at all, much less must any device disclosed in the reference be tested.

I turn to the specific evidence on which Viskase relies:

As to Element 1, "A food barrier casing for enclosing a foodstuff...," it is undisputed that JP '131 discloses "a casing for manufacturing pressed ham," of which the plastic outer multi-layer is made of polyethylene and nylon. World Pac admits the bulk of this assertion but purports to deny that JP '131 discloses a "plastic." This partial denial is not supported by the record. Not only does JP '131 literally disclose, in its claim 1, "a shrunken *plastic* film as the outer layer" (emphasis added), but World Pac elsewhere admits that JP '131 "teaches a multi-layer casing including polyethylene and polyamide *plastic* foils." World Pac's Resp. to Viskase's PFF ¶ 339 (emphasis added). World Pac cites no evidence for its denial that the polyethylene and nylon

---

reference was "effective"). To the extent World Pac's argument is an oblique assertion that JP '131 does not anticipate because it is not enabled, World Pac carries the burden of proof on any such claim, *see Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003), and its failure to make this argument directly, with evidentiary support, precludes a finding in its favor.

layers in JP '131 are properly characterized together as "plastic." Moreover, World Pac's expert, Dr. Gilbert, undisputedly admits both that the polyethylene and nylon structure disclosed in JP '131 constitutes a barrier casing for enclosing a foodstuff, and that JP '131 teaches Element 1 of the '613 patent. Accordingly, I conclude that there is no genuine dispute that JP '131 discloses Element 1 of the '613 patent.

As to Element 2, a "steam and/or gas impermeable plastic foil," it is undisputed that the outer polyethylene and nylon layers disclosed in JP '131 are the same outer layers disclosed in the only embodiment of the '613 patent, and that dependent claim 8 of the '613 patent recites the use of these materials in the claimed "impermeable plastic foil."[3] Viskase also points to the testimony of Dr. Gilbert in which he agreed that JP '131 has an impermeable plastic foil to steam and/or gas as that term is used in the '613 patent, and also agreed that JP '131 discloses Element 2 of the '613 patent.

World Pac purports to deny that Dr. Gilbert testified as Viskase asserts, but at the preliminary injunction hearing,

---

[3] Claim 8 recites, "The barrier casing according to Claim 1, wherein the impermeable plastic foil (1) comprises at least two foils laminated together and selected from the group consisting of polyethylene foil and polyamide foil."

Dr. Gilbert testified as follows: "Q: Element 2, "At least one steam and/or gas impermeable plastic foil 1 []. Do you see that? A: Yes. Q: The Japanese '131 reference describes that, does it not? A: Yes." Viskase Exh. 8, Prelim. Inj. Hr'g. at 485:9-14. Dr. Gilbert also testified at his November 30, 2010, deposition as follows: "Q. And you would agree with me, then, that JP-131 has an impermeable plastic foil to steam and/or gas as that term is used in the '613 patent? A: As used in the '613 patent, it is construed so. Okay." Viskase Exh. 12, Nov. 30 Gilbert Dep. at 209:23-210:2. World Pac's denial is thus belied by the record.

World Pac also characterizes Dr. Gilbert's admissions as "speculative," because he has not tested a casing constructed as described in JP '131. This, however, is merely a variant of World Pac's legally flawed "what's good for the goose is good for the gander" argument. Moreover, World Pac points to no affirmative evidence to suggest that Dr. Gilbert's understanding is other than the prevailing one among those skilled in the art at the relevant time. And because the understanding of one skilled in the art is dispositive, Dr. Gilbert's uncontroverted testimony eviscerates World Pac's attempt to raise a genuine factual dispute on this issue. The undisputed evidence shows that JP '131 discloses Element 2 of the '131 patent.

11

As to Element 3, "an absorbent inner layer joined to the inner side of the impermeable plastic foil," JP '131 discloses the use of cellophane film as an inner layer commonly used in the prior art, and explains that cellophane is desirable for its "rich water-absorbing properties," which allow it "to transfer the color of a color agent during boiling or steaming onto the skin side of the pressed ham." Viskase Exh. 24 at VCI035717. World Pac disputes that the disclosure of cellophane anticipates the inner layer claimed in the '613 patent. I conclude, however, that World Pac fails to raise a genuine dispute that JP '131 discloses Element 3.

To begin with, the phrase "absorbent inner layer" was not among the claim terms submitted for judicial construction, and World Pac has not asserted that it should be given any special meaning in the asserted patent. In particular, World Pac has not argued that the "absorbent inner layer" limitation of the '613 patent is met only by an inner layer having "rich" (or some other specified degree of) water-absorbing properties. And World Pac does not go so far as to deny that the inner layer disclosed in JP '131 has *some* water-absorbing properties. Nor could it, as Dr. Gilbert's testimony is otherwise.

In his November 30, 2010, deposition, for example, Dr. Gilbert explained that although cellophane's absorbency compares unfavorably to that of Bounty paper, *see* Viskase Exh. 12, Nov. 30 Gilbert Dep. at 223:6-225:6, "[b]oth of them have water-absorbing properties." *Id.* at 216:21-22. This is consistent with his April 20, 2010, testimony, in which he acknowledged that under some conditions, cellophane might absorb certain food coloring agents to a certain extent, *see* Viskase Exh. 11, April 20, 2010, Gilbert Dep. at 260:4-8, and could be used to transfer color to an enclosed foodstuff in "one or more cases." *Id.* at 262:23-24.

In addition, Dr. Gilbert has admitted broadly that Element 3 is disclosed by JP '131. At his April 20, 2010, deposition, Dr. Gilbert testified as follows: "Q: And so Element 3 of Claim 1, as you've parsed that claim, is described by the Japanese '131 patent of Exhibit 89? A: Yes." Viskase Exh. 11, April 20 Gilbert Dep. at 263:1-4. Then, at the preliminary injunction hearing, he testified, "Q: Element 3, 'An absorbent inner layer 2 joined to an inner side of the impermeable plastic foil. A: We went through that. We agreed." Viskase Exh. 8 at 485:15-17.

World Pac nevertheless claims that this issue is disputed, stating that "cellophane has limited absorbency for

the purposes of customary use in the present industry."[4] But this factual statement, even if true, fails to controvert the undisputed evidence that JP '131 discloses the absorbent inner layer claimed in the '613 patent.  The pertinent question is what a skilled artisan would have understood JP '131 to disclose at the relevant time.  Whether cellophane is sufficiently absorbent for "customary" use (whatever that may mean) in the "present industry" is largely, if not entirely, beside the point.

In short, World Pac raises, at best, a genuine dispute about whether the cellophane disclosed in JP '131 was accurately characterized as having "rich" water-absorbing properties.  But the evidence is undisputed that JP '131 discloses an inner layer (of cellophane or of "another material having the same properties") with sufficient water-absorbing properties to achieve a transfer of color in some cases.  Accordingly, there is no dispute that it anticipates the "absorbent inner layer" of Element 3 of the '613 patent.

Viskase's argument as to Element 4, "the inner layer comprising fibers selected from the group consisting of woven fibers, fabric, knits and fleece," flows from its Element 3

---

[4] World Pac's Resp. to Viskase's PFF ¶¶ 319-322, 324, 325, citing the evidence discussed below.  World Pac's response to PFF ¶ 318 contains the same quotation, omitting the words "in the present industry."

14

argument and goes like this: JP '131 discloses an absorbent inner layer of cellophane or "another material having the same properties"; the only properties of cellophane described in JP '131 are its "rich water-absorbing properties"; and fibrous materials, including fabrics, were known by those of skill in the art at the time to have rich water-absorbing properties. Therefore, one of skill in the art would understand JP '131 to disclose an inner fibrous layer that could have been a fabric, as recited in Element 4.

Viskase overreaches slightly with the assertion that rich water-absorbing properties are the "only" properties of cellophane described in JP '131. In fact, that cellophane "shrinks" when the enclosed food is heated is the characteristic of cellophane that JP '131 discloses in the sentence immediately preceding the critical language, "[a]lthough cellophane is preferred in the inner layer, another material having the same properties can of course be used as well." Viskase Exh. 24 at VCI035718. Nevertheless, the reference explicitly discloses cellophane's water-absorbing properties in conjunction with its discussion of cellophane's use in the prior art, where one object was "to transfer the color of a color agent during boiling or steaming." *Id.* at VCI035717. That a skilled artisan reading JP '131 at the relevant time might have thought, "Cellophane?

15

Now that's an odd choice if one wants an inner layer with 'rich water-absorbing properties'!" does not negate the patent's literal disclosure of an inner layer whose water-absorbing properties make it desirable for transferring color.

Nor does it controvert the undisputed evidence that such a reader would have understood certain fibrous materials, including certain fabrics, to fall within this description. For example, Dr. Gilbert testified that he knew, at the relevant time, that some fibrous materials, including some fabrics, had water-absorbing properties. Viskase Exh. 12 at 215:4-24. Viskase's expert, Dr. Reitman, states that "similar" materials to the cellophane described in JP '131 would include "cellulose, paper, and other fibrous materials common in the casings industry," citing, *inter alia*, contemporaneous communications between the inventors of the '613 patent.[5] Although Dr. Gilbert purports to dispute, in his expert rebuttal report, that the materials cited by Dr.

---

[5] Viskase Exh. 2 at ¶ 38. World Pac disputes that Dr. Reitman's opinion in this regard is that of a skilled artisan, since she "had not yet graduated with her Bachelor's degree in March, 1990, among other reasons." While I am skeptical of World Pac's suggestion that Dr. Reitman must personally have qualified as a skilled artisan at the relevant time to form a reliable opinion today about what such a person would have understood, I need not linger on the question because of Dr. Reitman's explicit reliance on a contemporaneous statement by Tom Schäfer, an inventor of the '613 patent and undisputedly a skilled artisan.

Reitman are "similar" to cellophane, his testimony elsewhere contradicts the basis for his purported disagreement. Dr. Gilbert states in his expert rebuttal report that a skilled artisan would not "replace" the cellophane inner layer disclosed in JP '131 with a "fiber-based absorbent layer" because doing so would "result in a rough and/or mottled surface appearance on the finished product," and would thus be "unfit for its goal of producing a uniform color treatment to the foodstuff that is preferred by Japanese consumers." Viskase Exh. 14, Gilbert Expert Rebuttal Report of 11/22/10 at 7-8. But this assertion--which is without citation in the report--is contradicted by Dr. Gilbert's specific admissions that a skilled artisan would understand Japanese or Western paper--both admittedly fibrous materials--to fall within JP '131's disclosures, and that neither type of paper, nor indeed certain fabrics, would leave a mottled appearance on the enclosed foodstuff. Viskase Exh. 12, Nov. 30 Gilbert Dep. at 230:18-23; 232:25-234:4.[6] In addition, Dr. Gilbert also frankly admitted that JP '131 discloses Element 4 of the '613 patent: "Q: Okay, so would you agree with me that

---

[6] Dr. Gilbert testified as follows: "Q: And so you find that JP-131 also discloses Japanese paper and Western paper; correct? A: Yes. Q: And Japanese and Western paper have fibers; correct? A: Right. Q: So would Japanese and Western paper leave a mottled appearance on the-- A. No. Q.--surface of the ham? A. No." . . . Q: [] Are there certain fabrics that do not leave a mottled appearance? A. Absolutely."

17

Element 4 of claim 1 of the '613 patent, as you've parsed that claim, is present in the Japanese '131 reference of Exhibit 89? A: Yes."[7]  Viskase Exh. 11 at 264:12-16.  In view of Dr. Gilbert's specific testimony that directly contradicts his more general statement that a skilled artisan would not "replace" the cellophane film disclosed in JP '131 with a fiber-based absorbent inner layer, I find that there is no genuine factual dispute as to whether JP '131 discloses Element 4 of the '613 patent.

Finally, in support of its claim that the undisputed evidence establishes that Element 5 of the '613 patent, "wherein the inner layer is impregnated with coloring and/or flavoring agents in an amount sufficient to impart color and/or flavor to the foodstuff when the food barrier casing encloses the foodstuff" is present in JP '131, Viskase again relies heavily on Dr. Gilbert's testimony.  Dr. Gilbert stated both during his April 20, 2010, deposition, and again at the preliminary injunction hearing, that the color

---

[7] World Pac hopes to mitigate this testimony by drawing attention to Dr. Gilbert's preceding testimony, in which he first stated that JP '131 did not disclose Element 4 and then said, "I'm confused."  Having read this portion of the transcript in context, it is clear that Dr. Gilbert was initially confusing two prior art references; that his testimony that Element 4 was not present related to the other reference, not to JP '131; and that once he remembered which was which, he stated unequivocally that Element 4 was disclosed in JP '131.

transfer disclosed in JP '131 "might" be "sufficient" and "enough" for some applications. *See*, *e.g.*, Viskase Exh. 11, April 20 Gilbert Dep. at 271:13-16. ("Q: So you would agree that for some applications, the Japanese '131 patent would satisfy Element 5 of the '613 patent? A: Might."). And, as noted previously, Dr. Gilbert also testified that the absorbency of the inner layer disclosed in JP '131 is sufficient "to transfer color to a desirable color layer" in "one or more cases." *Id.* at 262:11-24.[8]

World Pac does not identify any evidence to controvert Dr. Gilbert's testimony, which is sufficient to show anticipation. *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 781, 782 (Fed. Cir. 1985) ("It is also an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if *one* of them is in the prior art")

---

[8] Dr. Gilbert testified, "I don't think it teaches enough to enable it to cover all cases," Viskase Exh. 11 at 262:14-15, but upon further questioning, he stated, "I agree that there can be a -- one or more cases where it would meet that objective." Viskase Exh. 11 at 262:23-263:4. It is perhaps in view of this testimony and other evidence that the absorbent inner layer disclosed in JP '131 is sufficient for some applications that World Pac does not challenge JP '131's enablement under § 102: World Pac would likely undermine its already tenuous position on the issue of claim definiteness were it to argue that JP '131 is not enabled as to the "amount sufficient" limitation of the '613 patent.

19

(original emphasis). Accordingly, the evidence that JP '131 discloses Element 5 of the '613 patent is undisputed.

IV.

For the foregoing reasons, I grant Viskase's motion for summary judgment of invalidity based on anticipation. All pending motions are denied as moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 3, 2011